The 4th District Appellate Court of the State of Illinois has now convened. The Honorable Eugene G. Doherty presiding. Good morning. The court is calling People v. Vincent Nelson, number 423-0480. Counsel for the appellant, please state your name for the record. Tony Hunneth. And counsel for the appellee, please state your name for the record. Katrina Kuhn. Thank you both. Counsel for the appellant, you may proceed. Thank you, Your Honor. May it please the court. Counsel, my name is Tony Hunneth. I'm here for the appellant on behalf of Vincent Edward Nelson. Your Honors, this case involves a failure by the trial court and a failure by trial counsel to inform Mr. Nelson of important, arguably critical information in order for Mr. Nelson to make an informed, knowledgeable, and voluntary decision regarding his admission to the state's petition to revoke. In this case, words matter. Both the words that were said to Mr. Nelson, and perhaps more importantly in this case, the words that were not. This is also a case about following the rules. I will address the trial court's failings first. Mr. Nelson entered what he believed to be a partially negotiated admission to the state's petition to revoke with the state's agreement to cap his sentence at 10 years. When Mr. Nelson entered this admission, no one, not counsel, not the state, and most importantly, not the judge, informed Mr. Nelson that the state's recommended 10-year cap would not be binding on the court. First, if we look at the words that were said to Mr. Nelson, the trial court expressly informed Mr. Nelson of the complete sentencing range for the offense that he pled to, 4-15 years in the Illinois Department of Corrections, with the possibility of continued treatment court or temporary probation as the only non-penitentiary options. Specifically, the court told Mr. Nelson, quote, this plea agreement contemplates that any statutory sentence could be imposed, but that the state agrees to cap its recommendation at 10 years in the Department of Corrections. So, is that your understanding of what this plea agreement calls for? End quote. Mr. Nelson agreed. That was his understanding of the agreement with the key word in that sentence being but. But, a word that we all use in the English language to contradict something that was said just before it. He stumbled, but he did not fall. You could be sentenced up to 15 years, but the agreement calls for no more than 10. But does not inform Mr. Nelson that the sentence above that that was agreed to was even possible. Counsel, another word, recommendation, does that carry with it any meaning relevant here? That perhaps that it was not a hard limit on the agreement? Your Honor, that's where in my briefs, I referred the court to the specific language that was contained in the written admission itself. In that written admission, it says, and again, I quote, defendant agrees to admit to second PTR open admission. State agrees to cap of 10 years IDOC. There it does not say it's a recommendation. It specifically says state agrees to a cap of 10 years in the Illinois Department of Corrections. What about the judge's statement about the use of the word recommendation? Does that change the analysis at all? I don't believe it changes the analysis, and Your Honor, again, I refer back to the judge's use of the word, but he reiterates that the state has agreed to a 10 year cap. So he tells them the sentencing range ensures that he understands the agreement with the exact stipulation being that 10 year cap and that remaining in place. Now, Your Honor, with that, the judge does tell Mr. Nelson and ensures him that he understands the agreement, understands what the state promised as part of that agreement, but the court said nothing about what the court can and can't do with that agreement or his admission once it's been made. With that, Rule 402, 402A, 402D3, they're all clear, they're all mandatory. In 402D3, it specifically says the judge shall inform the defendant in open court at the time the agreement is stated as required by paragraph B of this rule that the court is not bound by the agreement and that if the judge, sorry, if the defendant persists in his or her plea, the disposition may be different from that contemplated by the agreement. Nothing about this language is optional. The court shall inform the defendant. Not only did the court not inform the defendant, Mr. Nelson, that the agreement was not binding on the court, the court also did not give him the opportunity to persist or withdraw from his admission once he received that information. He didn't get the information. Was the judge required to use that exact language that's in the rule? And if not, what language should the judge have used? So, Your Honor, the court was required to substantially comply with the rule. So, he was not required to say it verbatim the way that I just said it to you. However, he was required to have those very components in whatever he did say to the defendant. He could have told him, you understand that the state has given a recommendation of 10 years, I could still sentence you up to 15 years. Is this still what you would like to do? Do you still want to enter this admission knowing you could be sentenced up to 15 years? That didn't happen. He didn't use the exact language. He didn't use any similar language. He didn't use anything at all to say, I'm not bound. This is just a recommendation. You could still receive the sentence up to the statutory maximum of 15 years. He did not then give Mr. Nelson the opportunity to persist or withdraw his admission. That's not compliance at all. It's not substantial. It's just no compliance. He didn't follow rule 402 D3 at all. And those rules are in place to make sure that defendants like Mr. Nelson enter into these agreements knowing involuntary, free from threats, coercion, promises made outside of the agreements. They're designed to ensure that all judges throughout the entire state are thorough, transparent, and clear when they're speaking to defendants like Mr. Nelson. They're in place for the defendant's protection and to ensure the defendant's understanding of the court proceedings. This mandates that if a judge does not concur in an agreement, then the judge must inform the defendant at the time the agreement is stated in open court that the judge isn't bound. That did not happen here. He did not inform Mr. Nelson that the sentence could be different from that contemplated by his agreement with the state. He did not inform the defendant that he had the opportunity to persist or withdraw his in his admission. Here, the judge, at the time the agreement was stated, he either knew he was not going to be honoring that agreement and going above the sentencing cap, or he was at a minimum unsure if he was going to honor the agreement. But either way, the court was bound to admonish Mr. Nelson clearly that it was not bound by the agreement and to inform Mr. Nelson that due to fact that he was not bound, despite the agreement, he could still get the statutory maximum of 15 years. The court was then also obligated to ensure that Mr. Nelson still wished to persist in his admission following that mandatory disclosure. You know, we can't find substantial compliance here because just the trial court informing Mr. Nelson of the agreement, plus the applicable statutory range and ensuring his understanding of those two things does not somehow equal substantial compliance. He still had to meet those other elements to try to bridge that gap. It's just it's a bridge too far. It's a jump too long to say, I told you your sentencing range. I made sure you understood your agreement with the state. That somehow means you understand I'm not bound by this agreement that I'm accepting. I'm not bound by anything that surrounded that agreement that resulted in your admission. That's just not what 402 D3 calls for. Now, so I know the record suggests that your client said that his attorney didn't tell him what that meant. Almost out of curiosity, does the record suggest whether his attorney understood that that was the deal that it was a recommendation and not a limit on the court? So, Your Honor, and I did note this in my brief as well. It appears from the record that counsel and the state in this case were shocked when the sentence came into effect above the 10-year cap that was agreed to. Defense counsel immediately objected, reminded the court that they agreed to a 10-year sentencing cap. The state immediately followed up with, Judge, we agreed to a 10-year sentencing cap. So it does not appear that counsel believed it to be not binding on the court or just a recommendation. And that's probably furthered by the fact that the court did not tell Mr. Nelson of this at the time that the agreement was read into the record. And, Your Honor, that also goes into my, you know, trial counsel failed to tell Mr. Nelson on top of the court's failure, trial counsel did not tell Mr. Nelson that the court would not be by this agreement or that he could get sentenced up to the 15 years. You know, his attorney has a duty to protect him and his rights as well. And while trial counsel's error could have been remedied had the court informed Mr. Nelson, since the court did not, trial counsel's failure to do so just exacerbates the issue itself. You know, defense counsel's duty is to protect and inform her client. This includes informing your client of all relevant laws, offers sentencing possibilities, as well as the consequences of any admissions along with any rights that are being given up as a result. Nothing about counsel's failure here to advise her client that he could still, despite the agreement with the state, be sentenced up to the maximum of 15 years, constitutes effective assistance of counsel. And that failure alone supports that counsel's performance fell below the objective standard of reasonableness for any defense attorney. Further, Mr. Nelson in this case was clearly prejudiced because he was sentenced above that 10-year agreement. He got a 12-year sentence and he didn't even contemplate that that sentence was possible when he entered his admission. He was told the cap was 10 years. Then Mr. Nelson's immediate attempts to withdraw his admission further highlights that had he received that information from the court or from counsel, the outcome would have been different. He likely would not have entered his admission. He immediately sought to withdraw. So if you look at those facts and you apply them to the established Strickland test, he does satisfy both prongs. Counsel's performance was deficient and fell below an objective standard of reasonableness, and that deficient performance prejudiced Mr. Nelson. But for that deficient act or omission, there's a reasonable probability of a different result. Mr. Nelson likely would have exercised his right to a hearing or he likely would have persisted in a completely negotiated disposition that didn't contain a non-binding recommendation. Failing to form Mr. Nelson of this agreement that it was not binding is also not a collateral consequence. It's a material element in ensuring that his admission was knowing and voluntarily entered into and that he had complete knowledge of the potential sentencing consequences. This fell below an objective standard of reasonableness. That also goes to the conflict that counsel found herself facing when it came time to argue Mr. Nelson's motion to withdraw his admission and for reconsidering of sentence. You know, 604D requires conflict-free counsel even for post-trial proceedings, post-admission proceedings. Here, counsel alludes to her own ineffectiveness and then she failed to zealously argue her own effectiveness. She even failed to attempt to establish either prong of the Strickland test to support Mr. Nelson's motion to withdraw his admission and she hedged her arguments in asserting that Mr. Nelson's lack of knowledge, his lack of intelligence surrounding his admission to the petitioner to revoke was due to Mr. Nelson claiming she never informed him that any agreement breached by the state was non-binding on the court or that he give you a sentence above the agreed-to path. She attested in her 604D certificate that she consulted with Mr. Nelson. She ascertained his contentions of error in the entry of his admission to the petition to revoke. So she knew in advance of going into that hearing that he was asserting she was ineffective and failed to inform him of the potential consequences. This is also evidenced from her own statements where she argues Mr. Nelson has stated that defense counsel did not inform him that the state's agreement to cap their recommendation that that does not bind the court and because of that he's asking to withdraw his admission as it was not knowingly and intelligently entered by him and he did not understand the consequences because he was not informed of that information. That was defense counsel's argument. She knew before she went to that hearing that he was arguing he did not know or intelligently make a decision because he was not informed of the proper information and she omitted in telling him that information so he could make an informed decision. Counsel has no duty to raise her own ineffectiveness and while she never said the words ineffective assistance, once she alludes to her own ineffectiveness, she absolutely had a duty to argue her ineffectiveness. Also, if she was going to have any divided loyalties in arguing her ineffectiveness, she had a duty then to inform the court that conflict counsel should be appointed and that she could not proceed on this motion. She didn't. She proceeded on the motion. She alluded to her own ineffectiveness and then she failed to zealously argue it on behalf of Mr. Nelson. That is a clear indication of her divided loyalties and the fact that she could not present this motion on his behalf. As a result, no hearing was ever officially conducted to determine any kind of credibility finding. There was no crankle hearing, which is not required because she was alluding to her own ineffectiveness, but we didn't get to make any credibility findings. The court didn't do any of those things based off of her not taking any ownership, not providing any more detailed information. She didn't provide any information for the court's consideration outside of that one statement that Mr. Nelson said he wasn't informed. The record is clear. Mr. Nelson wasn't informed on the record at any point prior to him being sentenced, that it was not a binding agreement on the court, and that was the very first time after he was sentenced that he was even informed he had the opportunity to withdraw his admission to the petition to revoke. Counsel's reluctance and hesitation and even advancing this argument is enough to show that divided loyalty. It established that Mr. Nelson did not have conflict-free counsel for his post admission proceedings, and counsel then had an actual conflict of interest when arguing his motion to withdraw the admission and for reconsider of sentence. Mr. Nelson's case should be remanded or he should get the agreement he actually signed up for. It should be reduced. You know, this is a case, like I said, Your Honors, about following the rules. In this case, had the rules been followed, Mr. Nelson would have been able to make an informed decision. He would have been able to knowingly and voluntarily enter his admission with the full information that was required that he could be sentenced up to the 15 years. He would have known it wasn't binding on the court. He didn't get the information that was required to be given to him to make a knowing and voluntary decision. We have these rules for a reason. They keep order and they make sure that defendants are not taken advantage of by recommendations that no one intends to follow. In this case, a recommendation that's not binding on the court provided no benefit to Mr. Nelson. He was denied his benefit that he thought he was getting in the bargain, that his sentence was capped at 10 years. He received no benefit with the state receiving all of the benefit. They got an admission, they didn't have to do a hearing, and they knew it wasn't binding on the court or should have known it wasn't binding on the court. In this case, I can't actually say the state knew because the state seconded Defense Counsel's objection when the sentence went over the 10-year cap. But it wasn't binding. The state received all of the benefit with no benefit to Mr. Nelson. That is why we have these admonishments. That is why 402 D3 is so important to inform a defendant of these different rules and what the court can and cannot do with an agreement and what a court can and cannot do with his admission. Your Honor, for those reasons, I would just state that Mr. Nelson would like to see a reduction in his sentence to the contemplated agreement of 10 years or for this court to hand it back to the trial court for re-sentencing and with instruction to allow him to withdraw his plea to the admission to the DTR. If we reduce the sentence to 10 years, that would be enforcing an agreement on the state that it didn't make. Agreed? Your Honor, I would argue that the state did make that agreement. Again, I refer back to the admission language that was actually in writing in the order where it said that the state agrees to the cap of 10 years. It does not say a recommendation there. It says the state agrees to a cap of 10 years. It doesn't tell us who's capped. It doesn't tell us if it's the state or the court. The admission statement itself, I believe, says the state agrees to a cap of 10 years. We know who was agreeing to it. We just don't know who the agreement capped. Did it cap the state or did it cap the court? Your Honor, in response to your question, and maybe I misunderstood you initially, but I believe you had said we're enforcing an agreement on the state that they did not agree to. I don't think that that's enforcing an agreement on the state that they didn't agree to because the state did agree to it. They said the state agrees to a cap of 10 years. As far as the court goes, I would argue that the court did agree to it when they accepted his admission and failed to tell him at the time that his admission was read into the record that it was not acquiescing or concurring and it was not bound. But the state did not agree to a flat-out plea agreement for 10 years. They agreed that they would not recommend more than 10 years. This would be giving the defendant a better deal than he made, which is a hard 10-year plea agreement. The state agreed to a sentencing cap of 10 years, Your Honor. It was not a recommendation in the sense that if it was a recommendation, then the court should have said it was just a recommendation and it was not bound. The language that the state used was a 10-year cap. Further, at the sentencing hearing, the state says on the record, Your Honor, we agreed to 10 years. So 10 years was the maximum that was contemplated by the state, by the defendant, by defense counsel. I don't think that anything that was said indicates anything otherwise, and that's why I would still be asking that it be reduced to the 10-year cap contemplated by the agreement as supported by the record and of proceedings. Thank you. All right, thank you. Ms. Kuhn. Good morning, Your Honors. Katrina Kuhn for the people of the state of Illinois. Good morning, counsel. May it please the court. Defendant should not be allowed to withdraw his admission to violating his probation. Just to respond to a couple of things from the discussion with Ms. Hemnath. Words do matter and the key word here is recommendation. And what doesn't matter is our defendant's subjective beliefs, what the defendant may have thought would be happening. And here, the record is clear that Rule 402 was complied with, and again the rule is substantial compliance. The trial court here provided complete admonishments. The court stated at page 114 of the record that this was a plea with no agreement. That is clear from the record. The court also said that, as Ms. Hemnath quoted, the plea agreement contemplates that any statutory sentence could be imposed. The court then noted that the state had agreed to cap its recommendation and it was a recommendation to 10 years. If the court was stating that there was a plea agreement to 10 years, that would have been stated. The defendant stated that he understood this possible range of penalties and the court shortly thereafter asked if the defendant understood everything he said so far and gave the defendant another chance to indicate his agreement. What about 402 D3? That seems to suggest that there is one additional piece of information that the court is obligated to provide beyond what you just described. That's just what I was There was different language used in Collins, but basically the language that the court used here had the same effect. In Collins, the court did tell the defendant that it was not limited by a plea agreement and the court did not confirm if the defendant still wanted to persist in his plea. That would be the language that everyone would use if there was required language. Here, again, there's no required language. Here, the court explained it wasn't bound by the agreement. The defendant pled. The court asked if he understood the range of penalties and the defendant said yes. The reason that the court didn't use the persist in the plea language here was that the court explained it before the defendant entered his plea. The court was satisfied and the court made that assertion and made that confirmation and then the defendant did enter his plea. So there was no additional. Counsel, you said the court explained that it was not bound. What language are you claiming that the court used to do that? Because the court did not use the word bound at any point in the record. Your honor, you're correct. The court did not use that and again, there is no required wording. The court at, I believe it's record page 114. 114 through 116 is the actual discussion we're talking about, but the defendant was told initially by the court that it was a plea with no agreement. The court then said the plea agreement contemplates that any statutory sentence could be imposed. That's another way of saying that the do you believe? I mean, do you think the record reflects that the defendant understood that language? I do. The court explained it very clearly. The court, the defendant understands what the word recommendation means. The defendant said he understood the range of penalties and again, the arguments here are that this defendant got a sentence that he did not contemplate. That's the defense is arguing. Well, again, if that was the rule, then there would be a lot of, you know, there are a lot of ways that the trial court could make these admonishments and we have to look at substantial compliance and not what defendants subjective beliefs may be, but what the court, what the record indicates. The record also reflects that the defense counsel and the state's attorney, neither one believe that the court was bound by the agreement, by their statements, but yet you believe the defendant understood it. I think, you know, we can only, you know, when we're looking at the cold record, we don't know exactly what happened. We are not privy to what the discussions were between counsel and defendant. But again, you know, the court is, you look at the entire record of the admonishments themselves and what the defendant himself was actually told. And counsel is also pointing out about the written order of the violation, admission to the violation and how the admission, that order talked about the cap. Well, we would look at the written order, but when there's a conflict between the two, the oral statements control and the record controls. And what is in the record is that the state, pardon me, the court clearly stated that it was a recommendation. The cold record actually shows that no one in the courtroom knew what in the hell they were doing. That's what it actually said. The judge failed to admonish in words that would have been interpreted such that there wouldn't be in the field. The defense attorney didn't pay attention to the admonishments. The prosecutor didn't pay any attention to the admonishments. It would have been so easy to indicate, to make sure that the defendant understood, to suggest that the defendant understood what a recommendation means is at odds with the fact that apparently no one else in the courtroom knew what it meant. If there's an ambiguity, should it be in favor of the state or should it be in favor of the defendant? Who probably doesn't understand Miranda or doesn't understand half the language that's used in the courtroom. I suppose that's an editorial comment, but I do find it interesting that we're suggesting the defendant knew all along what was going on and it's clear the other parties didn't. Well, you don't need to respond to that. You can if you want to try. Well, your honor, I would just point out that, you know, again, we are looking at these things on a record. We, you know, their defendants are admonished in court every day, multiple times, you know, is everything done exactly by the book as we would like it, then that would, that would. In this case, you know, we are arguing that 402 was substantially complied with. Defendant was repeatedly asked if he understood. And again, I find that this argument, I would say is that this case is distinguishable from Collins. Counsel, I think you may have hit on what is really the issue here. Pleas happen every day. People are admonished every day. And for those of us who were standing in the courtroom, listening to this time after time after time, certain words are imbued with certain meanings. And it might well be understood by somebody who's there all the time what recommended from the state means. But the state's driving the bus on the prosecution. I'm not so sure why we should believe that a defendant would come to the conclusion that recommended means that you might get more. I agree that that, you know, defend a defendant is standing in a different part of me position, then then the attorneys who are in the courtroom every day and the judge, you know, the people also argue that, you know, what if the defendant was given erroneous evidence that does not necessarily destroy the voluntary nature of a plea, there's there's plentiful case law on that. And I cite a case in remedial, but not about the content of the plea, not about the parameters of the plea. You can't plea to something different than you get sentenced, right? You think you're pleading to a hard 10 and you get 12. You can't write that off as erroneous information. But but to make that conclusion, though, this court would have to find that, you know, again, the court, the court admonished the defendant that the range was 4 to 15 and that the court could impose any sentence allowed by the statute. That is what is on the record. It's kind of a roundabout way of saying what 402 D3 tells the judge to say, by the way, when the state says they recommend it doesn't mean I'm bound by it. That's half a sentence that that that is that is a brief statement that the court can can make. That is the language, the specific language of 402 D3. Again, but again, it is not a strict compliance situation here. And proceeding. Pardon me. And proceeding to defend this additional arguments. You know, we don't know what defense counsel told defendant we don't we have no we have nothing in record on that. We do have some indication that counsel actually had the same misunderstanding about what was what the agreement was. If counsel didn't think that the agreement allowed the judge to go above 10, it's pretty certain that counsel didn't tell the defendant otherwise. I know again, I cannot change what is in the record. Defendant does rely on the case of and I would like to say why canard is distinguishable canard and canard the council's representations to defendant about her ability to keep her void card. They were not cured by the trial courts admonishments and the court also applied the wrong legal standard. There is a much stronger case here than in canard. And again, that we have no indication of exactly what was said. This court would be this court and for defendants to make such an argument on appeal, void card, that's a collateral consequence, right? But the imprisonment is not a collateral consequence. Well, the defendant was was admonished that he would receive a term of imprisonment in this case. In a way that you and I can understand I agree. Of up to 15 years and again, his his after the fact assertions are not are not germane here. Um, and let me see if there's something else I can reply to. Um, uh, and your honor spoke a little bit at the end of this argument about the court and the plea agreement and the court of course is not a party to any plea agreement as the admonishments reflect the court is not a party to a plea agreement. The court does not have to, you know, to agree with sentence within the plea agreement. So I would list the court, the people would like to point that out. Well, right. But if it were for a hard cap of 10, the court would have to either accept it or reject it. Court couldn't accept it and then give well, right then there. And again, this was a plea with no agreement. This was not as as may have been depends on who you ask. This was not a partially negotiated plea. As I argued in my in my brief under Robinson, this was an open plea. This was a plea under which the the state had made a recommendation, but the court was still able to sentence under the full range of sentences. How well do you suspect this defendant or maybe even just the average defendant would be able to articulate that distinction? I can't speak to defendant subjective assertions. He or his education or his previous court experience, he was he had been admonished many times. If you look at his criminal record and really what defendant is doing is making an excessive sentence claim. And I ask your honors to to to keep that in mind. He's making an excessive sentence claim. He had multiple chances at drug court probation here. He he failed. He relapsed after about how would that impact our decision? I'm just I'm just pointing out, Your Honor, that I know. But why are you pointing it out? How would it impact our decision? I'm just as you as you consider all of defendants arguments and read the entire brief, I'm just asking that you consider that what defendant is really defendant is is unhappy with his plea. He is has, you know, has some remorse. He's and so what the so the defendant is adding, you know, which is perfectly fine, adding an argument that the sentence was excessive, which is certainly allowed to do raise any argument on appeal. And the people just ask the court to to keep that in mind. Your honors, if there's if there are no other questions, I would ask that the defendant should not be allowed to withdraw his plea. If this court was to find that defendant was entitled to any relief, we would ask that the the plea or the sentence be reduced to 10 years. Thank you. This is Hannah. Your Honor, I would like to first respond to the state's use of the case People v. Robinson. They use that case to support substantial compliance with Rule 402 D3. In People v. Robinson, in paragraph five, the court specifically tells the defendant, Now you have a very limited agreement with the state. It sounds like their agreement is that they would cap the recommendation to 18 years. Do you understand that the defendant? Yes, Your Honor, the court. And so you are aware that the court is not bound by that cap or that recommendation. So it is possible that this case, since you are mandatory class X sentencing on counts one and two, that you could be sentenced up to 30 years in the Illinois Department of Do you understand that the defendant? Yes, Your Honor, the court. And it is a minimum six years. So you could get more than 18 years. You can get less than 18 years, but it's going to be somewhere between six and 30. Defendant? Yes, Your Honor. Nothing about Robinson is comparable to what happened here. Exactly what the court told the defendant in Robinson is exactly what the court did not tell Mr. Nelson in this case. Mr. Nelson was not informed. And in People v. Collins, while that was a collateral issue, it was regarding a void card for second chance probation. Ultimately, court, she wasn't told. And when counsel had to then argue that issue, he did not do so zealously. There were different issues that arose in each of these cases that are analogous to what happened here that are similar. Robinson is wholly inapplicable along with several of the other cases that were cited by the state that either involved no agreement at all the defendant going to trial or a sentence that was below the state sentencing cap. In this case, Mr. Nelson had a right to be informed. And while the state is correct, subjective beliefs generally do not matter. We have these rules to ensure that defendants subjective beliefs are in line with what the court is intending to do with an agreement or admission. That is why we have rule 402 D three. That is why the court is bound to tell a defendant that's why he shall tell a defendant that it is not bound by an agreement. That is why he must inform a defendant that the sentence could be above the recommendation. That is why he then again, a second step must after informing the defendant of that information, determine that Mr. Nelson still wish to persist in his admission after receiving that information. That is all why we have that rule in place. It's again to ensure that all judges inform all defendants with clarity and transparency of the court proceedings. Doesn't matter how many times the defendants been in the court system, they do not know the language or the consequences the way that their lawyers, the judge and the state do. Further, Your Honor, this was a plea with no agreements. That's clear from the record that that is set. However, then I refer the court back to the use of the word but the plea agreement contemplates that any statutory sentence could be but that the state agrees to cap its recommendation at 10 years. The court never says anything to contradict that it's not bound. It actually just contradicts the statutory sentencing range. We can't cut off what the judge actually said to Mr. Nelson in order to make our argument. We have to look at the entire statement to determine what Mr. Nelson's understanding was of the consequences of his admission. And looking at that entire statement, Mr. Nelson was told but the sentence contemplated or the state's recommendation is at 10 years. That's what almost anyone hears. Everyone always hears what is said after the word but. Like I said before, you could be sentenced up to 15 years but the state agrees to cap its recommendation at 10. Mr. Nelson heard but the state agrees to cap its recommendation at 10 and no one told him anything to the contrary. Your Honor, that is why it would be our preferred remedy that Mr. Nelson's sentence be reduced to the 10 years that was contemplated by the agreement that he entered into in front of the court. Thank you. All right. Thank you, counsel, both of you. The court will take the matter under advisement and we now stand in recess.